UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATING ENGINEERS LOCAL 324
HEALTH CARE PLAN, ET AL.,

    Plaintiffs,

v.

DIVERSICON EXCAVATING LLC, ET AL.,

    Defendants.
    _____/

Case No.  12-11492

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

**ORDER GRANTING IN PART AND DENYING IN PART  PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [20]**

This case involves Plaintiffs' claims that Defendants have violated their collective bargaining agreements ("CBAs") by not paying fringe benefits.  Plaintiffs are eight separate trust funds of Operating Engineers Local 324.  Defendants are businesses and an individual owner who conduct business in the building and construction industry, and who are obligated by collective bargaining agreements to make monthly contributions to the Plaintiff pension funds. According to the same CBAs, Defendants are required to submit to periodic auditing of their books by Plaintiffs to ensure proper contributions are being made.  Before discovery during this lawsuit, Defendants had refused to allow any audits since January 2010.

Before the Court is Plaintiffs' Motion for Summary Judgment [20], Defendants' Response [21], and Plaintiffs' Reply [22] and Errata Sheets [25, 26]. For the reasons that follow, Plaintiffs' Motion for Summary Judgment [20] is **GRANTED** as to Counts I, II, and IV—Diversicon Excavating, LLC and Diversion, Inc.'s violation of the CBA and Defendant Farrell's personal liability under the Michigan Builders Trust Fund Act; and **DENIED** as to Plaintiff's Motion [20] as to Count III—Defendant Farrell's violation of fiduciary duty under ERISA.

## STATEMENT OF FACTS

Plaintiffs are trust funds established under and administered pursuant to 29 U.S.C. § 186—the Labor-Management Relations Act of 1947 ("LMRA")—and ERISA. Defendant Mark Farrell owns Defendants Diversicon Engineering LLC and The Diversicon Company, Inc. On April 1, 1999, Farrell executed a short-form CBA with the International Union of Operating Engineers Local 324. That agreement and the other CBAs relevant to this lawsuit obligated Diversicon Excavating, LLC to remit fringe benefit contributions to Plaintiffs for all work covered by the CBA. Throughout the relevant period, Diversicon, Inc. performed work and/or subcontracted work for which fringe benefit contributions were required to be paid. During discovery, Plaintiffs audited Defendant. The audit determined that Defendants owe Plaintiff

$83,788.40 in unpaid fringe benefits and $8,343.57 in liquidated damages for the audit for a total of $92,131.97 for the period of January 2010 through June 2013. The audit identifies two employees, with the bulk of contributions in arrears for only one of them. In previous cases before Judge Battani and Judge Roberts, Diversicon Excavating, LLC was determined to be bound by the CBAs relevant to this matter.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

As a preliminary matter, Defendants argue that Plaintiffs do not have standing to bring this case due to the generic rule that the beneficiaries of trusts, not the trust itself has standing to bring cases. However, 29 U.S.C. § 1132(d)(1) specifically allows an ERISA "employee benefit plan [to] sue or be sued under this subchapter as an entity."

Defendants also point to the terms of the specific CBAs at issue to argue that Plaintiffs lack standing. Defendants point to a section of the CBA that contemplates actions brought by trustees against the trust or other trustees "arising out of the administration of the Trust Fund" to argue that only trustees as beneficiaries may initiate suits. Defendants' argument fails because the term they cite relates only to cases "arising out of the administration of the Trust Fund," which this case does not—this case is about unpaid fringe benefit contributions. Another preliminary argument that Defendants raise is asserting that Plaintiffs' motion is untimely. After each of several status conferences, the Court set report back dates, but no hard filing deadlines. Plaintiffs discovered new evidence of what type of work Defendants performed—in the form of exhibits to Defendants' Response [21]—after they filed their Motion for Summary Judgment [20]. The Court finds good cause to excuse any untimeliness of Plaintiff's Motion [20] that may exist.

**Count I: Breach of the CBA as to Diversicon Excavating LLC**

Plaintiffs assert that Diversicon Excavating, LLC was bound by and breached the CBAs during the relevant time period. Diversicon Excavating, LLC does not dispute is bound by a CBA with Plaintiffs. Diversicon Excavating, LLC argues that it did not breach the CBA because it did not perform any work during the relevant time period. Diversicon Excavating, LLC ceased all operations prior to January 2010 and has not had employees since prior to that time. Plaintiffs' Reply [22] argues that Diversion, Inc. is a continuation of Diversicon Excavating, LLC and that Defendants may have created Diversion, Inc. to shirk Diversion, LLC's CBA obligations. Whether the Diversion, Inc. may be held liable for Diversicon Excavating, LLC's CBA obligations will be analyzed *infra*. In the alternative, Diversicon Excavating, LLC argues that even if the work in the audit can be attributed to Diversicon Excavating, LLC, it is not covered work. Defendants argue that the only work covered by the CBAs is underground construction work. Plaintiffs' Reply [22] argues that multiple CBAs contemplate a broader range of work that would require Defendants to make fringe benefit contributions.

The short form agreement that Diversion, LLC executed states:

> [t]he undersigned Employer agrees to abide by the Wage Rates, Fringe Benefits, and all other terms, conditions, and provisions in the most recent Collective Bargaining Agreements between [ten expressly identified and distinct trade associations] and the Union

> for the entire state of Michigan, and further agrees that the Wage Rates, Fringe Benefits, and all other terms, conditions, and provisions contained in the aforementioned Labor Agreements shall be applicable according to the character of the working being performed by the Employer.

Pl.'s Reply [22] Ex. B. Each of the CBAs covers different kinds of work and require different types of contributions. The ten distinct CBAs clearly indicate that there is no genuine question of material fact that highway work—the type of work uncovered in the audit—as well as underground work, is covered work.

**Count II: Breach of the CBA as to The Diversicon Company, Inc.**

Plaintiffs argue that Diversion, Inc. is jointly and severally liable[1] for Diversicon Excavating, LLC's obligations under the CBAs pursuant to a single employer or alter ego theory. Defendants also argue that Plaintiffs' attempt to hold Diversicon, Inc. liable for Diversicon Excavating, LLC's obligations under a single employer or alter ego theory is not yet ripe. The basis for Defendants' unripeness argument is circular. Defendants argue that because questions of whether the work was covered, whether Diversion, Inc. is obligated by the CBA as Diversicon Excavating, LLC's alter ego, and the amount of damages remain, the question of

---

[1] Defendants incorrectly argue that joint and several liability is derivative, in fact it is a direct theory of liability.

whether Diversion, Inc. is liable is unripe. The short form agreement in conjunction with the MITA Highway CBA conclusively indicate that the work in question was covered work and a question any remaining question about damages does not preclude summary judgment on liability.

Defendants argue that questions of material fact remain as to whether Diversicon, Inc. may be held liable for Diversicon Excavating, LLC's obligations under the CBAs pursuant to a "single employer" or "alter ego" theory. The "alter ego doctrine" operates to bind an employer to a collective bargaining agreement, pursuant to the NLRA, if the employer is found to be an alter ego of a signatory employer. *Trustees of Detroit Carpenters Fringe Benefit Funds*, 581 F.3d at 318. Alter-ego operations binding a non-signatory employer to a CBA with a signatory employer, pursuant to the NLRA, occur in two factual contexts: (1) when the new entity begins operations but is merely a disguised continuance of the old employer, and (2) in a "double-breasted operation," when two or more coexisting employers performing the same work are in fact one business, separated only in form. *Trustees of Detroit Carpenters Fringe Benefit Funds*, 581 F.3d at 318. The test for determining whether two companies are alter egos "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th

Cir. 1990). In applying these factors, no individual factor is outcome determinative." *Allcoast Transfer*, 780 F.2d at 582. An employer's intent to evade the obligations of a CBA is merely one of the factors to be considered and is not a prerequisite to the imposition of alter-ego status. *Fullerton Transfer*, 910 F.2d at 337.

Defendants argue that the single employer/alter ego theory has never been applied in an ERISA case. However, the Sixth Circuit has upheld the alter ego theory to affirm the obligation of alter ego non-signatory contractors to pay fringe benefits in *Trustees of Painters Union Deposit Fund v. Interior/Exterior Specialist Co.*, 371 F. App'x 654 (6th Cir. 2010) and *Trustees of Detroit Carpenters Fringe Benefit Funds v. Industrial Contracting, LLC*, 581 F.3d 313 (6th Cir. 2009).

In *Trustees of Painters Union*, the Sixth Circuit concluded that union painting contractor and non-union painting contractor were alter egos—or a single employer—where companies' funds were pervasively intermingled due to numerous undocumented intercompany transfers and other payments, firms' management and ownership had some overlap, and firms' business purposes were separate but not mutually exclusive. Both contractors were required to pay fringe benefits to union fund under union contractor's collective bargaining agreement with union. *Id*.

Similarly, in *Trustees of Detroit Carpenters*, the Sixth Circuit concluded that union sized employer and non-unionized employer were alter egos where there was

no evidence that signatory employer was formed or operated with intent to evade any of nonsignatory employer's preexisting contractual obligations, since employers had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. Both employers were bound by the CBA. *Id*.

Here, Plaintiff has documented that Diversicon, Inc. has substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership as Diversicon Excavating, LLC.

First, Diversion, LLC and Diversicon, Inc. have common ownership and common management in the form of Co-Defendant Mark Farrell as sole owner. Although Farrell submitted an affidavit that the companies are not single employers or alter egos, self-serving affidavits of companies' owners is insufficient to create a genuine issue of fact to survive summary judgment. *Laborers' Pension Trust Fund-Detroit and Vicinity v. Lange*, 2006 WL 891167, *9 (E.D. Mich. Mar 27, 2006) (citing *Laborers' Pension Fund v. RES Enviro. Servs., Inc.*, 377 F.3d 735 (7th Cir. 2007). Further, in depositions taken during previous litigation between the parties, Farrell admitted that he was the person "who decided whether the work was performed satisfactorily or finished." [20] at 14.

As to the business purpose and equipment factors, both Diversicon, Inc. and Diversion Excavating, LLC operate out of the same office. Defendants are unable to

produce contracts supporting their claims that Diversion Excavating, LLC and Diversicon, Inc. utilized employee leasing or subcontracting via a third party. The same employees who worked for Diversion Excavating, LLC continued to do similar work for Diversion, Inc. after the corporate structure change.

As to the supervision factor, the bulk of Plaintiffs' claims for damages are based on the work of a single employee—Calloway. Calloway worked for both Diversion, LLC and Diversicon, Inc. This weighs in favor of a conclusion that Diversion, Inc. is an alter ego of Diversion, LLC. *See Laborers Pension Trust Fund-Detroit and Vicinity v. Interior Exterior Specialists*, 394 F. App'x 285, 293 (6th Cir. 2012) (concluding that employers were alter egos partially based on fact that single employee performed work for both employers). As to the operations factor, Diversion, Inc, performed the same work covered by the CBAs to which Diversicon Excavating, LLC was a signatory. Defendants argue that the time period during which the two entities performed work never overlapped, however, that is immaterial to an alter-ego determination. Further, Diversicon, Inc. previously directly paid fringe benefits to Plaintiffs. There is no genuine question of material fact that Diversion, Inc. is an alter ego of Diversicon Excavating, LLC and is bound by the relevant CBAs.

**Count III: Breach of Fiduciary Duty under ERISA as to Mark Farrell**

Plaintiff argues that Defendant Farrell breached his fiduciary duty under ERISA. Pursuant to ERISA, "a person is a fiduciary with respect to a plan to the extent he . . . exercises any authority or control respecting management or disposition of its assets . . ." 29 USC 1002(21)(A)(i). In every case charging breach of ERISA fiduciary duty the threshold question is whether that person was acting as a fiduciary—i.e. was performing a fiduciary function—when taking the action subject to complaint. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Whether unpaid plan fringe benefits constitute plan assets sufficient to make employers plan fiduciaries is an unsettled issue in the Sixth Circuit. *See Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 F. App'x 67 (6th Cir. 2012) (announcing persuasive authority that alleged refusal by principals of corporate employer to pay CBA contributions did not rise to level of exercising discretionary control such that fiduciary status attached under ERISA).

The vast majority of persuasive authority indicates that "employer contributions become an asset of the plan only when the contribution has been made." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) (citing Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin 2008–1,* at 1–2 (Feb. 1, 2008); U.S. Dep't of Labor, Advisory Op. No. 93–14A (May 5, 1993); U.S. Dep't of Labor, Advisory Op. No. 2005–08A (May 11, 2005)). Consequently, the Court holds that Defendant

Farrell did not exercise authority over plan assets when he did not pay fringe benefits and, therefore, did not breach his fiduciary duty when he did not pay them.

**Count IV: Breach of Fiduciary Duty under Michigan Builders' Trust Fund Act ("MBTFA") as to Mark Farrell**

In Count IV of their complaint, the Plaintiff funds advance a separate state-law basis for recovering against Defendant Farrell personally. All of Defendants' viable[2] arguments in against MBTFA liability are premised on the work at issue being not covered and/or Diversicon, Inc. not being an alter ego of Diversion Excavating, LLC. Since this has already decided those presumptions are wrong, Defendant Farrell is likely personally liable under the MBTFA. Under the plain language of the MBTFA, Farrell's "intent to defraud" may be shown through evidence of "[t]he appropriation by a contractor . . . of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment." M.C.L. § 570.153. Interpreting this MBTFA provision, Michigan state courts have held that "a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the

---

[2] Defendants also argue that Plaintiffs have failed to identify any payment that Defendants did not make that they were obligated to make. This assertion is untrue. Plaintiffs' audit shows that Defendants failed to pay $83,788.40 in fringe benefit contributions.

subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment," and that a plaintiff "need not prove what the [contractor] defendant did with the money if a reasonable inference of appropriation is present." *Livonia Building Materials Co. v. Harrison Constr. Co.*, 742 N.W.2d 140, 144 (Mich. Ct. App. 2007).

Defendants do not assert that they were never compensated for the work at issue. A presumption of misappropriation of funds arises when proceeds received from jobs are "disbursed on outstanding bills when monies became available without regard for the requirements of the MBTFA." *Livonia Building Materials*, 742 N.W.2d at 145. Defendant Farrell has testified that he is unilaterally in charge of the companies' finances, so when he failed to make contractually required fringe benefit contributions, he "fail[ed] . . . to pay . . . others entitled to payment." *Livonia Building Materials*, 742 N.W.2d at 144. Consequently, Defendant Farrell is liable for damages under the MBTFA.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment [20] as to Counts I, II, and IV is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [20] as to Count III— is **DENIED**.

**IT IS FURTHER ORDERED** that fourteen days of the date of this Order, Plaintiffs shall file with the Court and serve on Defendants a proposed judgment consistent with the Court's ruling. If Defendants wish to object to the entry of this proposed judgment, they must file and serve any desired objections within seven days after Plaintiffs' service of their proposed judgment, and Plaintiffs may file and serve any desired response to these objections within seven days after Defendants' service of their objections. The Court will then address any objections and enter an appropriate judgment in favor of Plaintiffs and against Defendants.

**SO ORDERED**.

_____

Dated:  ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE